## THE MARY A. TRYON.

(District Court, S. D. New York.   March 22, 1899.)

LIEN FOR TOWAGE—CHARTERED BOAT.

> A boat cannot be subjected to a lien for towage services rendered under a contract with a charterer in the usual course of his business, the tower having knowledge that it was chartered, unless by a previous understanding to that effect with the owner.

In Admiralty.   Lien for towage.   Chartered boat.

Benedict & Benedict, for libelant.
James J. Macklin, for claimant.

BROWN, District Judge.   The libelant seeks to recover $295 for towages of the canal boat Tryon on the Hudson river in the months of August, September and October, 1895.

The evidence shows that the boat was chartered by the claimant to John Scott, who was engaged in the ice business, and who was running a number of chartered boats, all of which were towed during that season by the libelant under a contract for towage made in the spring with the libelant's agent; that the libelant knew that the boats were chartered; and that the bills for towages were rendered by the libelant to Scott monthly, pursuant to the contract, charging the towages against him, and specifying the amounts for towing each boat respectively.   In August, on account of the previous monthly bills not being satisfactorily paid, one Quigly, who had chartered a boat to Scott, was notified by the libelant that it would look to the owners of the boats for the payment of the towages, and he was requested to notify the other owners of the boats that Scott was running to that effect.   This was before claimant's boat was hired. Quigly thereupon withdrew his boat from Scott's employ, and introduced Scott to the claimant, who thereafter on the 19th of August let the Tryon to Scott at the rate of $4 a day, including the service of a man on board as caretaker.   Quigly testifies that when he introduced the matter to the claimant, he told him that the Cornell Company had notified him that they would look to the owners for the

payment of towages, and that he for that reason had withdrawn his boat from Scott's employ. The claimant wholly denies this statement, and testifies that he would not for a moment have let his boat to Scott under such circumstances, as the towages were $8 a day, and his own pay but $4; and that it had never been the custom of the libelant or anybody else to his knowledge to collect the towage of chartered canal boats from the owners, but only from the charterers. Scott failed in October; and not until after that was any notice given by the libelant to the claimant that it looked to him for towage or expected him to pay it, although the collecting agent of the libelant had been accustomed to see the claimant during the three months previous almost daily, and the libelant knew that the claimant was the reputed owner of the Tryon. The claimant further testifies that he had been frequently accustomed to have towages done for him by the Cornell Company, and a bill was rendered for the towages trip by trip.

Under the circumstances above stated, I can have no doubt that the contract for the season's towage originally contemplated a personal liability only, without any lien upon the boats towed. The J. M. Welsh, 8 Ben. 211, Fed. Cas. No. 7,327; The Tillie A., 84 Fed. 684. The cross-examination of Quigly throws doubt upon his statement that he told the claimant when the boat was hired in August that he had withdrawn his own boat because the libelant would look to the boat for towage, and in view of the claimant's entire denial of it, and the extreme improbability that the claimant would have chartered his boat if thus informed and have incurred such responsibilities greatly in excess of the hire, leads me to credit the claimant's statement rather than Quigly's. It is against conscience that in a business like this towages for the charterer's account, when the tower knows that the boats are chartered, should be imposed upon the owner without a previous understanding to that effect. Knowledge that the boat was chartered, and the necessary implication in such a business as this, that the charterer and not the owner should pay for towages, as well as Quigly's testimony to the ordinary practice to collect of the charterers only, and the libelant's dealing with Scott alone and not with any master of the boat, are sufficient to prevent the libelant's recovery. The case is similar in principle to that of The Kate, 164 U. S. 458, 465, 17 Sup. Ct. 135, where it was held that no lien would exist merely upon dealings with the charterer, even if the credit were given to both the charterer and to the vessel, because the charterer had no authority to bind the vessel. In this regard I do not think towages in the usual course of the charterer's business, and not arising in any exceptional emergency, stand in any better position than repairs and supplies. The same rule was re-affirmed still more pointedly in The Valencia, 165 U. S. 264, 17 Sup. Ct. 323, where the supply men had no express knowledge of any charter but had knowledge of facts sufficient to put them on inquiry.

In the present case, moreover, the fact that no notice of any claim for towages was sent by the libelant to this claimant, nor any account of towages till after Scott's failure, notwithstanding the fact that during this delay of three months the claimant was seen frequently by the collecting agent, and the fact that the bills during all this time

were rendered to Scott alone, forbid the finding that the towage was in fact upon the bona fide credit of the boat rather than the personal credit of Scott.

The libel is dismissed with costs.